UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL WIGGINS, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois corporation,<br><br>                Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Michael Wiggins ("Plaintiff Wiggins" or "Wiggins") brings this Class Action Complaint and Demand for Jury Trial against Defendant Allstate Insurance Company ("Defendant" or "Allstate") to stop Allstate from directing its agents to violate the Telephone Consumer Protection Act by making pre-recorded and other telemarketing calls to consumers *without their consent*, and to otherwise obtain injunctive and monetary relief for all persons injured by Allstate's conduct. Plaintiff Wiggins, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.  Plaintiff Michael Wiggins is a resident of Stuart, Florida.

2.  Defendant Allstate is an Illinois registered corporation headquartered in Northbrook, Illinois. Defendant conducts business throughout this District, the State of Florida, and the United States.

**JURISDICTION AND VENUE**

3.  This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant operates multiple offices in this District, does business in this District, and the wrongful conduct giving rise to this case arose from that business and was directed to Plaintiff while he was residing in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or pre-recorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

7. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

8. While "prior express consent" is required for all pre-recorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be

obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

9. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

10. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

15. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

17. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

18. Allstate provides insurance to consumers.[3]

19. In order to generate sales and generate consumer leads for its salespeople, Allstate contracts with third-party lead generators.

20. These third-party lead generators place unsolicited calls to consumers, including calls that use a pre-recorded voice message system.

21. For example, in Plaintiff Wiggins's case, a third-party lead generator placed a pre-recorded call to Wiggins' cell phone, which resulted in Plaintiff being connected to an Allstate sales office in Florida who solicited him for business.

22. In response to this call, Plaintiff Wiggins files this lawsuit seeking injunctive relief requiring Defendant to cease from violating the Telephone Consumer Protection Act by, among other things placing unsolicited calls to consumers' cellular telephone numbers using pre-recorded messages, as well as an award of statutory damages to the members of the Class and costs.

## ALLSTATE IS RESPONSIBLE FOR THE UNLAWFUL TELEMARKETING THAT IS CONDUCTED ON ITS BEHALF BY THIRD-PARTY TELEMARKETERS

23. Upon information and belief, Allstate pays for the leads that are generated as a result of the third-party telemarketing calls that are placed on its behalf.

24. In addition, Allstate profits from sales that are made from leads generated by third-party companies.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.allstate.com/about.aspx?intcid=ILC-OurStory-141201:AllstateOverview

25. The Federal Communication Commission has instructed that corporations such as Allstate may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

26. As per Plaintiff's experience, the pre-recorded calls that are being placed on behalf of Allstate using the company name Consumer Insurance Association.

27. Numerous consumers have posted complaints about calls they received from Consumer Insurance Association in which they were connected to Allstate agents. For example:

- "So this is a really weird one. I decided to call them and see how far I could get today. They **ended up connecting me to an actual Allstate agent** as far as I can tell (planning to verify tomorrow by calling allstate), but the Agent that they connected me to seemed legit, and had a profile that links directly from the actual Allstate website with his phone number…"[4] (emphasis added)

- "So, random call from this number this morning. Claiming to work for Consumer Insurance Association, trying to get information about me. Only question I answered was do I have car insurance, which I do. Total scam for information. The person sounded automated, took like 7 seconds to respond after I said something.. they **said they worked for Allstate** to sound more credible. Do not give your name or info to this number."[5] (emphasis added)

---

[4] https://www.reddit.com/r/Scams/comments/bg2wzu/consumer_insurance_association_just_wants_to_help/

[5] https://findwhocallsyou.com/7579171139?CallerInfo

- "got a call today from a very nice lady that said she was from "Consumer Insurance Association" i always love messing with scammers so when she asked me questions i gave reasonable answers and to my surprise, i was then *forwarded to a real Allstate insurance office for a quote* so i then asked where the office was and was told by this new person that it is in queens and that the previous person was from a marketing company, to make this long story a little shorter the end result was i like to stay more local for things like this and that was the end of it."[6] (emphasis added)

28. A consumer posted the following on Scammer.info, showing that they were also connected to an Allstate agent:



29. The aforementioned consumer continued with their post, stating that they addressed the illegal call with Allstate who claimed that its lead generators are TCPA compliant and who then refused to look into the matter any further:

---

[6] https://callername.com/5164188012
[7] https://www.scammer.info/d/27990-consumer-insurance-association-scam-202-318-5444/6

> Their number is **252-435-2777**
> Agents I spoke to: Roslyn (agent), Rocio (manager). They told me their email is deskh4758@gmail.com.
> AllState refuses to look into this matter, says all their lead generators are TCPA compliant which is obviously a lie. They refuse to look at the call recording or look up my callerID and go from there either.
> https://shieldinsuranceservice.com/ [8]

30. In response to the above posts, either the author of the original post or a different consumer posted the following:

> Same story, another TCPA violation by the "Consumer Insurance Association" aka Filipino call center and they transferred me to another AllState:
> - https://www.scammer.info/d/30478-consumer-insurance-association-car-insurance-scam-19842038759
> - https://www.scammer.info/d/25250-car-insurance-scam-502-206-1391 [9]

## PLAINTIFF WIGGINS'S ALLEGATIONS

31. Plaintiff Wiggins's cell phone is not associated with a business and is used for personal use only.

32. On September 15, 2020, Plaintiff Wiggins received a pre-recorded call on behalf of Defendant Allstate using phone number 561-409-8156 to his cell phone number.

33. When Plaintiff answered this call, he was under the impression that he was speaking to a live agent.

34. However, Plaintiff was engaging with an automated attendant that is programmed to sound like a live operator and respond to pre-scripted prompts using pre-recorded answers.

35. The auto attendant states that it is with Consumer Insurance Association and is calling on behalf of State Farm, Allstate and Farmer's Insurance regarding car insurance quotes.

36. Plaintiff said that he wasn't interested and the call was disconnected.

---

[8] *Id.*
[9] *Id.*

37. Frustrated by the call that he received, Plaintiff called 561-409-8156 back to complain about the unsolicited call he received and to find out who was responsible for that call.

38. In calling 561-409-8156 back Plaintiff noted that he was again interacting with an automated attendant that could only provide pre-recorded responses and which always spoke using the exact same automated script.

39. Determined to figure out exactly who made the calls and to inform the company to stop calling him, the Plaintiff called 561-409-8156 and answered all of the questions the automated attendant asks, including his zip code, number of owned cars, current insurance provider and whether he owns his own property.

40. Plaintiff was then transferred by the automated attendant to an agent named Joe who identified himself as being an Allstate agent.

41. Joe provided Plaintiff with 813-424-5710 as his office's contact number.

42. According to the WhitePages, 813-424-5710 is registered to an Allstate office:



10

43. Upon an investigation placed by Plaintiff's attorneys, when 813-424-5710 is called, a live agent will answer identifying the company as Shamburger Allstate.

44. Plaintiff told the Allstate agent Joe that he was upset about the unsolicited call that he received.

---

[10] https://premium.whitepages.com/phone/1-813-424-5710

45. Joe offered to put Plaintiff's cell phone number on a do not call list and then hung up the phone.

46. The unauthorized prerecorded solicitation telephone call that Plaintiff received from Allstate, as alleged herein, has harmed Plaintiff Wiggins in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his cell phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phones.

47. The call also wasted Plaintiff's time, as Plaintiff called 561-409-8156 back repeatedly in order to determine which company was behind the unsolicited, pre-recorded call that he received.

48. Plaintiff was very disturbed by this unsolicited call, as his phone number is kept private and used for personal use only.

49. Seeking redress for these injuries, Plaintiff Wiggins, on behalf of himself and aClass of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded and other telemarketing calls to cellular telephones.

## CLASS ALLEGATIONS

50. Plaintiff Wiggins brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called on their cellular telephone number (2) using a pre-recorded voice message, (3) for a the same purpose that Plaintiff was called, and (4) for whom Defendant claims (a) they obtained prior express consent in the same manner as Defendant claims they supposedly obtained prior express consent to call Plaintiff, or (b) they did not obtain prior express consent.

51. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Wiggins anticipates the need to amend the Class definitions following appropriate discovery.

52. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Wiggins and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether an agent working on behalf of Defendant placed pre-recorded voice message calls to Plaintiff Wiggins and members of the Pre-recorded Class;

(b) whether Defendant's calls to Plaintiff and other consumers were made for telemarketing purposes;

whether Defendant's calls to Plaintiff and other consumers were made without the requisite level of consent;(c) whether Defendant's conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff Wiggins will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Wiggins has no interests antagonistic to those of the Class, and Defendant

has no defenses unique to Plaintiff. Plaintiff Wiggins and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Wiggins nor his counsel have any interest adverse to the Class.

55. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Wiggins. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wiggins and the Pre-recorded No Consent Class)**

56. Plaintiff Wiggins repeats and realleges paragraphs 1 through 55 of this Complaint and incorporates them by reference.

57. Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Wiggins and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

58. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Wiggins and the other members of the Pre-recorded No Consent Class.

59. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Wiggins and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Wiggins individually and on behalf of the Class, prays for the following relief:

60. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Wiggins as the representative of the Class; and appointing his attorneys as Class Counsel;

61. An award of actual and/or statutory damages and costs;

62. An order declaring that Defendant's actions, as set out above, violate the TCPA;

63. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

64. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Wiggins requests a jury trial.

DATED this 15th day of October, 2020.

By: /s/ Stefan Coleman

Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com

K<small>AUFMAN</small> P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*